**In re KEDZIE BLOCK CORPORATION.**

**Appeal of MORRIS.**

**No. 8201.**

Circuit Court of Appeals, Seventh Circuit.

June 10, 1943.

Rehearing Denied July 2, 1943.

Benjamin B. Morris and David I. Spark, both of Chicago, Ill., for appellant.

Wm. P. Fortune, Trustee, Harry G. Hershenson and Charles J. Trainor, all of Chicago, for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

Kedzie Block Corporation was reorganized under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. On consummation of the adopted plan a final decree was entered by the District Judge on October 10, 1940, which discharged the trustee, made certain injunctive provisions, and closed the estate. 11 U.S.C.A. § 628.

On May 14, 1942, by leave of that court, Benjamin B. Morris filed his petition for an order amending the final decree by striking therefrom paragraph 14 and parts of paragraph 12, which with other related events, will be set forth in chronological order. By order of court, Vera Carroso answered the petition, and no other answer was filed. The issues raised were referred to a special master who, after a hearing, recommended a denial of the petition. The court confirmed the master's report, dismissed the petition, and assessed the costs of reference to Morris. From that decree this appeal is prosecuted.

The facts out of which this controversy arose are as follows: During the years 1927 and 1928 Vera Carroso and her husband George, now deceased, owned and held title to the real estate here involved, upon which they constructed an apartment building. In constructing this building they expended $100,000, and on November 12, 1927, borrowed an additional $100,000 to complete it. On the same date, in order to secure the $100,000 which they borrowed, they gave a trust deed for this property to Heitman Trust Company, as trustee. That instrument was recorded on November 21, 1927. This loan of $100,000 was evidenced by bonds signed by Vera and George Carroso, bearing 6% interest per annum, payable semi-annually on May 12 and November 12 of each year. Appellant became the owner of a number of them.

During the years 1930 and 1931, and subsequent years, rents in the building became greatly depreciated, and it was necessary to apply the rents to the payment of interest

on the bonds, and in addition thereto Mr. and Mrs. Carroso borrowed from their personal friends large sums of money to meet the payments of interest.

On February 20, 1935, Morris obtained a judgment in the Municipal Court of Chicago, on the bonds which he owned, against Vera and George Carroso, for $4,283 and costs, and execution thereon was issued on February 25, 1935. Thereafter in 1939, the real estate including the apartment building, known as the Kedzie Block, was conveyed by the Carrosos to a corporation, known as "Kedzie Block Corporation," organized by those of their personal friends from whom they had borrowed money, as referred to above, and on March 16, 1939, a proceeding for the reorganization of that corporation was filed in the District Court under Chapter X of the Federal Bankruptcy Act, by the Heitman Trust Company as the indenture trustee.

Prior to this time, however, that trustee had filed a proceeding in the Superior Court of Cook County, Illinois, for the foreclosure of the trust deed which had formerly been executed as security for the bonds therein described. That proceeding was referred to a master who reported, and a decree of foreclosure and sale was entered in conformity with the master's report.

In the reorganization proceeding, the District Court appointed Arthur P. Murphy as trustee for the debtor corporation, and on December 15, 1939, he presented to the court a plan of reorganization for the approval of the creditors and stockholders. On February 2, 1940, at a meeting of the creditors and stockholders, the trustee's plan for reorganization was approved. Whether appellant favored or objected to such approval the record is silent.

On September 9, 1940, the bankruptcy trustee and the indenture trustee, by their attorneys, served notice upon all the attorneys of record that they would appear before the District Court on September 10, 1940, for the entry of an order directing the distribution of the securities and providing for the consummation of the plan of reorganization. That decree was entered, and it further provided that the hearing should be continued to October 10, 1940, for the entry of the final decree, or for a report of progress. No further notice was served upon the parties or their attorneys of record as to the entry of the final decree. After the entry of the order of September 10, 1940, a copy of it was sent to every attorney of record, including appellant.

The plan, among other things, provided that a new corporation should be authorized to issue 10,500 shares of common stock of the par value of $10 per share. It provided for the distribution of this common stock in the following manner:

"(a) First Mortgage Bondholders to receive one share of stock for each Ten Dollars of principal amount of bonds and accrued interest thereon, or the aggregate amount of 9,945 shares.

"There is now due to the holders of first mortgage bonds the sum of $76,500.00 in principal amount, together with accrued interest thereon, and for said mortgage bonds, together with all accrued interest, there shall be issued approximately 9,945 shares of common stock.

"(b) Treatment of claims based on subordinated liens. Benjamin B. Morris, judgment creditor under judgment listed above, is to receive the sum of $750.00 cash for a release of said judgment as a lien against the property of the debtor.

"Rittenhouse, Marovitz & Wallenstein, attorneys for Sophie Wendell, are to receive the sum of $750.00, plus their court costs amounting to approximately $80.00, for a release of the lien of Sophie Wendell against the property of the debtor, and for a dismissal of the creditor's bill which is now pending in the Circuit Court of Cook County, Illinois, said moneys being paid to * * * (said attorneys) * * *, as attorneys' fees for services they have rendered in connection with said creditor's bill.

"(c) Stockholders of Debtor to receive the sum of $4,000.00 in cash. * * *"

On October 10, 1940, the District Court, pursuant to the order of September 10, entered its final decree which recites in detail the carrying out of the terms of the plan.

The only issue raised by appellant's petition to amend the final decree is whether the District Court erred in not striking from the final decree parts of paragraph 12 and all of paragraph 14 of the decree.

Those paragraphs are here set forth and we have italicized those portions of paragraph 12 which are sought to be stricken.

"12. That all the assets and properties assigned, transferred and conveyed to 217

South Kedzie Avenue, Inc., the reorganized corporation, pursuant to the provisions of the Plan and in accordance with the orders of this court, are hereby declared to be held by said 217 South Kedzie Avenue, Inc., a corporation, free and clear of all liens, claims and demands of every kind, character and description whatsoever, except lawfully accrued taxes. *The holders of all outstanding Kedzie Block First Mortgage Six Per Cent (6%) Gold Bonds, coupons* and trust deeds secured by properties formerly included in the estate of the Debtor, claims, either secured or unsecured, against the Debtor and its estate, *shall have no further rights thereunder with respect thereto* other than to receive stock in the reorganized corporation in respect thereof under and pursuant to the terms and provisions and conditions of the Plan of Reorganization and by this order, and all Kedzie Block First Mortgage Bonds, coupons and trust deeds and evidences thereof, all common stock of the debtor and any and all other instruments securing the obligations of the debtor constituting claims, liens or judgments against the property formerly included in the Estate of the Debtor shall have no further force and effect, and all rights thereunder are hereby forever barred and extinguished, and the Debtor, its stockholders, creditors and holders of claims against the properties formerly included in its estate be and they are hereby perpetually enjoined and restrained from asserting any rights thereunder with respect to any of the assets and properties formerly included in the estate of the Debtor.

"14. That the Heitman Trust Company, a corporation, was heretofore authorized and directed to deposit with the Chicago Title and Trust Company, a Corporation, all bonds and interest coupons of the Debtor, which have been exchanged for stock in 217 South Kedzie Avenue, Inc., a corporation, which said bonds and interest coupons shall be duly cancelled and retained by the Chicago Title and Trust Company, a corporation, in its files permanently. And the said Heitman Trust Company, a corporation, shall from time to time, as the bonds are exchanged by the persons herein named who have failed to exchange the same for the new securities, cancel and deliver such bonds and coupons to the Chicago Title and Trust Company, a corporation, as the same are received."

The final decree further sets forth the names of the holders of Kedzie Block First Mortgage Gold Bonds who had not exchanged their bonds for stock in the reorganized corporation. This list included Benjamin B. Morris and the administrator of Sophie Wendell, deceased. To all the holders of such bonds the indenture trustee had mailed notice substantially to the effect that new shares of stock of the reorganized corporation were available for distribution, and the manner, method, place and time of securing such shares of stock. On the same day that the decree was entered, Morris called at the Heitman Trust Company and requested that stock in the new company be issued to him. He was told by that company that he could not have the stock unless he delivered to them the bonds which he formerly held. He afterwards took those bonds to the indenture trustee and received in exchange therefor the shares of stock in the reorganized company to which the decree stated he was entitled. The bonds which he exchanged were the same upon which he had recovered judgment in the Municipal Court.

The specific contention of the petitioner is that the final decree exceeds the terms of the plan in this, that it deprives and enjoins him from enforcing his judgment in the Municipal Court, or any part thereof, against Vera Carroso. To that extent he urges that the District Court was without jurisdiction and without power to enter those portions of the decree which his motion seeks to strike.

We are convinced that those parts of the decree which appellant seeks to strike do not enjoin appellant from enforcing his judgment against Vera Carroso. Paragraph 14 merely recites that the Heitman Trust Company has been authorized and directed to deposit with the Chicago Title and Trust Company all bonds and interest coupons of the debtor which had been exchanged for stock in the new company, which bonds and interest coupons should be duly cancelled and retained by the Chicago Title and Trust Company in its files permanently; it further recites that the Heitman Trust Company should from time to time, as the bonds are exchanged by the persons therein named, who had failed to exchange the same for new securities, cancel and deliver such bonds and coupons to the Chicago Title and Trust Company as the same are received. Clearly this language does not deprive or enjoin appellant from enforcing his judg-

ment against Vera Carroso. The same may be said with respect to the portion of paragraph 12 which appellant seeks to strike. It merely states that the holders of all outstanding Kedzie Block first mortgage 6% gold bonds and coupons shall have no further rights thereunder with respect thereto.

It must be remembered that at the time this order was made, appellant rightly possessed no such bonds or coupons, for what he had theretofore owned had been merged in a judgment and appellant no longer had any rights under those bonds or coupons. How he came into possession of such bonds after judgment was rendered, or why the Chicago Title and Trust Company could thereafter make them a part of their permanent files, we have not been informed by this record. It seems, however, that the rules of the Municipal Court.permit a photographic copy of such exhibits to be filed instead of the original, and the judgment creditor is entitled to retain possession of the original. With this practice we are not concerned, only so far as it explains appellant's possession of the bonds on which he has secured judgment. Neither are we concerned with the reason why the authors of the plan should want them permanently filed anywhere. It is sufficient to say that that was the provision of the plan and appellant was required by the trustee to comply with the requirement. Of course, appellant had no further rights under or with respect to those bonds or coupons. His rights were merged in the judgment, and the portion sought to be stricken from paragraph 12 says nothing whatever about the judgment. If there are other portions of this section, or other parts of the decree which in any way purport to modify the judgment or curtail its effect with respect to Mrs. Carroso, they are not attacked by this motion.

Appellant further contends that the court erred in assessing the costs of the master's reference to him because it was not such a case as should be referred to a master under the rules. We agree that it should not have been referred to a master, but that fact will not relieve him from his liability under the court's decree. He made no objection to such reference and he received the benefit of such a hearing. He will not now be heard to complain of the result because of such irregularity.

The decree is affirmed.